Dear Mayor Dean:
You have requested an opinion of the Attorney General regarding questions pertaining to the sale and/or lease of municipally-owned Homer Memorial Hospital (Hospital). The facility has approximately fifty-five beds. We have been advised that Hospital Revenue Bonds were issued by the Town of Homer (Town), dated June 15, 1988, in the original principal amount of $3,800,000, interest 6-1/8%, final maturity June 15, 2018, which Bonds are payable from a pledge of the revenues of the Hospital. Interest on the Bonds is tax-exempt. The owner of the Bonds is the United States of America, Rural Economic and Development (RECD), formerly known as the Farmers Home Administration.
You first ask whether it is legally permissible for the Town to transfer surplus monies in hospital funds to the Town's General Fund. This office has previously opined in a letter opinion dated March 17, 1976, that a municipality could authorize the appropriation of excess operating revenues of a municipally-owned hospital to the municipality if such revenues are derived from patients' fees for rooms and services, and not from dedicated tax revenues and/or bond proceeds. It is our recommendation that,prior to the transfer of these funds, you contact bond counsel and representatives of RECD for assistance.
Your second question relates to the authority for the Hospital to be transferred to the Parish as a parish-wide hospital. We find the following provisions of law to be applicable to this issue:
 § 1071. Legislative findings and purpose
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that the hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. . . . The legislature further finds that hospital service
enclosing a copy of Sections 2115.11 through 2115.22 for your reference and convenience.
 districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, provisions of R.S. 46:1071 through 1076 shall be construed liberally.
 § 1072. Definitions
 As used in this Subpart, the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
 (1) `Hospital Health Services' means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
 (2) `Hospital service district' means:
 * * *
 (b) A hospital owned by a city, . . . .
 * * *
 (6) `Hospital service district commission' means the governing authority or managing board of a hospital service district as defined herein.
 § 1074. Medical office buildings and facilities leases; disposition of immovable property
 * * *
 B. (1) In addition to the powers otherwise provided and notwithstanding any other law to the contrary, a hospital service district commission, whether created under this Title or otherwise, and any health facility it owns or operates may sell and convey immovable property to any person or legal entity if the fair market value of the property, as determined by an appraisal, does not exceed:
 (a) Two hundred fifty thousand dollars for a hospital service district commission owning or operating a hospital with a licensed bed capacity of one to fifty-nine beds.
 * * *
 (2) Prior to the sale and conveyance authorized by Paragraph (1) of this Subsection, the hospital service district commission shall adopt a resolution declaring the immovable property sought to be sold and conveyed to be unnecessary for the operations of such hospital service district or any health facility it owns or operates.
 (3) Within six months prior to the sale and conveyance authorized by Paragraph (1) of this Subsection, the hospital service district commission shall obtain an appraisal of the immovable property to be sold or conveyed. The immovable property of the hospital service district or any health facility it owns or operates shall not be sold and conveyed for less than ninety percent of the appraised value.
 (4) Prior to the sale and conveyance authorized by Paragraph (1) of this Subsection, the hospital service district commission shall obtain the documented approval of the governmental authority charged with the appointment of the commission as to the hospital service district if the appraised value of the immovable property to be sold and conveyed exceeds:
 (a) One hundred thousand dollars for a hospital service district commission owning or operating a hospital with a licensed bed capacity of one to fifty-nine beds.
 * * *
 (5)(a) A sale and conveyance conducted under the provisions of this Subsection shall not require a public referendum or public advertisement.
 (b) A sale and conveyance conducted under the provisions of this Subsection shall not be subject to any public bid law.
 (c) Nothing in this Subsection shall prohibit or limit the sale and conveyance of immovable property owned by a hospital service district or any health facility it owns or operates pursuant to any other provision of law.
 § 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the Constitution of Louisiana. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contracts shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Constitution of Louisiana.
In addition to the above provisions, we draw your attention to R.S. 40:2115.11 which was enacted by Act No. 1371 of the 1997 Regular Session of the Louisiana Legislature. I am enclosing a copy of Sections 2115.11 through 2115.22 for your reference and convenience.
As can be gleaned from the above, the provisions of R.S.46:1071-1077, entitled "Enhanced Ability to Compete" (EAC) are applicable to municipally-owned hospitals. Attorney General Opinion No. 96-117. It is our opinion that Section 1077 constitutes ample authority for the Town, if it so desires, to enter into a joint venture, cooperative endeavor agreement or management agreement with the parish and/or the hospital service district. Further, the agreement could be structured so as to authorize the parish and/or district to exercise control over the Hospital's administration. We recommend that you contact bond counsel and representatives of the RECD for assistance before entering into any of these transactions.
You next ask whether it is legally permissible for the Town to sell or lease the immovable and movable property comprising the Hospital. In answer to your question, we again refer you to R.S.46:1074 and 1077, the pertinent parts of which are quoted hereinabove. We opine that these provisions constitute legal authority for the Town to sell and/or lease the immovable property comprising the Hospital. In accord are Attorney General Opinion Nos. 97-7, 96-510, 96-296, 94-443, 79-295 and 78-24. If the proposed sale of immovable property can be conducted pursuant to the provisions and requirements contained in Section 1074(B), a referendum is unnecessary.
However, prior to any sale or lease of the hospital facility, we direct you to contact the Office of the Attorney General in accordance with R.S. 40:2115.11, et seq. Questions concerning the procedures outlined in this law should be directed to Mr. Emory Belton, Assistant Attorney General at (225) 342-7191. In addition, we recommend that you contact bond counsel and representatives of RECD prior to any transaction involving the sale or lease of the hospital.
With regard to movable property, a review of the statutory provisions contained hereinabove reveals no specific authority for the municipality to sell same. However, in light of the broad authority granted a municipality to execute contracts of every, kind in order to carry out the objects and purposes for which the Hospital was created, we are of the opinion that surplus movable property may, likewise, be sold if the sale is deemed beneficial to said district. A conclusion to the contrary would not only contradict the spirit of the laws relating to hospital service districts, but also place the municipally-owned Hospital at a significant disadvantage within the health care industry, all in contravention of the statutory provisions contained in Section 1071, et seq. This conclusion is consistent with the conclusions previously expressed in the above referenced Attorney General opinions. As in the case of the sale of immovables, prior to the sale of the hospital's movable property, you should contact Mr. Belton concerning the ramifications of R.S. 40:2115.11.
We also draw your attention to R.S. 33:4341 which relates to the sale or lease of a revenue-producing public utility. It provides, in pertinent part, the following:
 § 4341. Sale of lease of revenue-producing utility property; election required; exception
 A. Any municipality . . . may sell or lease any revenue-producing properties owned by it, including all proper franchises to operate the properties for a term not to exceed sixty years, provided the governing authorities have been first authorized to do so by a vote of a majority of the qualified electors, voting at an election held for that purpose as herein directed. . . ."
This office has previously opined that a hospital is a revenue-producing public utility for purposes of Section 4341. Attorney General Opinion No. 94-443. Therefore, should the Town elect to sell the Hospital pursuant to Section 4341, a referendum resulting in a in favorable vote of a majority of the qualified electors is a prerequisite. Before initiating any action under this Section, we recommend that you consult Mr. Belton, bond counsel and representatives of RECD.
Your final question relates to the use of any excess revenues resulting from the sale of the Hospital. Initially, we note that the Hospital has outstanding indebtedness. In light of this fact, bond counsel and/or a representative of the bondholder should be contacted. In addition, you should contact Mr. Belton regarding the ramifications of R.S. 40:2115.11, et seq., on the use of excess revenues resulting from the sale.
Trusting this adequately responds to your inquires, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla